The Kantrow Law Group, PLLC
Attorneys for Cashfloit
732 Smithtown Bypass, Suite 101     **RETURN DATE: 1/22/25**
Smithtown, New York 11787           **TIME: 11:00 a.m.**
516 703 3672
fkantrow@thekantrowlawgroup.com

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS: EASTERN DIVISION
-----------------------------------------------------------------X
In re:

                                                     Chapter 11

       JMKA, LLC                              Case No. 25-00036

                             Debtor.
-----------------------------------------------------------------X

**OBJECTION OF CASHFLOIT LLC TO DEBTOR'S APPLICATION
SEEKING THE USE OF CASH COLLATERAL AND
<u>PROVIDING ADEQUATE PROTECTION</u>**

TO:   HON. DAVID D. CLEARY
        UNITED STATES BANKRUPTCY JUDGE

      Cashfloit LLC ("Cashfloit"), a secured creditor and party in interest in this chapter 11 bankruptcy case, by and through its attorneys, The Kantrow Law Group, PLLC, respectfully submits this as and for its objection (the "Objection") to the application of JMKA, LLC, the debtor and debtor in possession (the "Debtor") seeking the use of cash collateral on an interim basis (the "Cash Collateral Application" and states as follows:

      1.     The Debtor filed a voluntary petition for relief from its creditors on January 2, 2025 (the "Petition Date") pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtor continues to remain in possession and control of its assets as a debtor in possession. No trustee, examiner or official committee has been appointed in this case.

      2.     The Debtor sought on an emergency basis, the interim and immediate use of cash collateral. In its initial pleadings with this Court, the Debtor identified the existence of several secured creditors, to wit: Small Business Administration ("SBA"); BayFirst National Bank ("BayFirst"); Newity Bank ("Newity"); Funding Circle ("Funding Circle"); and Transportation

Alliance Bank ("Transportation") (collectively, the "Disclosed Secured Creditors"). The Debtor failed to provide any information regarding the nature of the security interests allegedly held by the Disclosed Secured Creditors nor did it provide copies of any loan documents or UCC filings pursuant to which these alleged Disclosed Secured Creditors perfected any security interest.

3. Nonetheless, the Debtor proposed to provide the Disclosed Secured Creditors with adequate protection for their secured interests in substantially all of the Debtor's assets. That being said, the Debtor did not disclose what the form of such adequate protection would be offered to these creditors. Similarly, the Debtor proposed to provide replacement liens but fails to provide the reasoning for providing same.

4. Left out from even the most basic proposed order authorizing the Debtor's use of cash collateral, and from the Cash Collateral Application itself, is Cashfloit. In fact, the Debtor's petition and schedules discloses Cashfloit with a debt in an unknown amount. This "disclosure" made by the Debtor is disingenuous, at best.

5. On November 25, 2024, less than two (2) months prior to the Petition Date, the Debtor and Cashfloit entered into a Sale of Future Receipts Agreement (the "Agreement") pursuant to which Cashfloit purchased $98,000 in future receipts of a payment of $70,000 to the Debtor. Pursuant to the Agreement the Debtor was obligated to remit the sum of $2,450 per week (the "Weekly Payment"). The Debtor is in default and currently owes Cashfloit the approximate sum of $90,000. Despite this, the Debtor failed or refused to include Cashfloit in its Cash Collateral Application and has failed to offer any form of adequate protection.

6. The purchased receivables are property of Cashfloit and not property of the bankruptcy estate. Therefore, they are not cash collateral and the Court should bar the Debtor from using Cashfloit's property in connection with its use of cash collateral. In the alternative, Cashfloit

requests that this Court condition the use of cash collateral on the Debtor treating Cashfloit like every other senior and junior creditor shall be treated under the Debtor's proposed order. Cashfloit should be granted adequate protection liens and the Debtor should make adequate protection payments to Cashfloit in the same amount of the Weekly Payment provided for in the Agreement.

7. Pursuant to the Purchase Agreement dated November 25, 2024, Cashfloit purchased the Debtor's future receipts (the "Future Receipts") defined as all payments made by cash, check, Automated Clearing House ("ACH") or other electronic transfer, credit card, debit card, bank card, charge card or other form of monetary payment in the ordinary course of business.

8. The Purchase Agreement is governed by the laws of the State of New York. The Debtor agreed to deliver 4.8% of is receipts (the "Receipts") to Cashfloit on a weekly basis until such time as Cashfloit received the Purchase Amoun in full. To effectuate the agreed upon arrangement, the Debtor authorized Cashfloit to ACH debit the amount of $2,450.00 on a weekly basis from the designated deposit account as the base payment credited against the Specified Percentage due. The Specified Amount was an estimate of the Specified Percentage, which would be reconciled to reflect the actual receipts upon request.

9. To secure the Debtor's obligations under the Agreement, the Debtor granted Cashfloit a security interest in the Debtor's assets, including, but not limited to all of the Debtor's accounts, accounts receivable, inventory, goods, general intangibles, all cash on hand and on deposit in bank accounts, trust companies, and similar institutions, and all other assets, proceeds and items not directly referred to herein (the "Collateral").

10. Cashfloit's security interest in the Collateral was perfected by the filing of a UCC-1 Financing Statement with the Tennessee Department of Statement (the "Cashfloit UCC-1).

11. Kasindra Ann Mladenoff, the Debtor's owner, guaranteed the performance under the Agreement (the "Guarantor").

12. The Debtor currently owes approximately $ under the Agreement.

## THE CASH COLLATERAL APPLICATION

13. On the Petition Date, the Debtor sought the protection of this Court. In the Cash Collateral Application, the Debtor seeks to provide, *inter alia*, adequate protection, which adequate protection is simply not disclosed, to the several creditors disclosed by the Debtor as well as to provide replacement liens. The Debtor has failed to identify the amounts allegedly due and owing the Disclosed Secured Creditors. The Debtor acknowledges that Cashfloit is a secured creditor but failed to include Cashfloit in its Cash Collateral Application or otherwise explain how it intends to use its cash collateral without paying adequate protection despite the fact that Cashfloit's position will likely be diminished during the Debtor's operations. The Debtor offers no explanation as to its position.

14. Cashfloit avers that the Agreement is in the nature of a financing agreement for the purchase and sale of future receipts and thus, not a loan. When interpreting a contract, a court should examine the document itself and, if unambiguous, apply its plain meaning. Here, it is clear from the face of the Agreement that it is not loan of money or forbearance of an existing debt. The caption of the document reads "Sale of Future Receipts Agreement." The body of the Agreement also makes plain that the Debtor sold the Purchased Amount of receivables and agreed to deliver same through the Specified Percentage and the Initial Periodic Amount of $2,450. Cashfloit reserved the right to reconcile to the Specified Percentage upon request.

15. New York law requires a finding that the Agreement is not a loan. Thus, should the Debtor attempt to argue that the agreement by and between the parties is somehow usurious,

4

this Court must reject such a hypothetical argument. In New York it is fundamental that only a loan can be found to be usurious. *See Donatelli v. Siskind,* 170 A.D.2d 433, 434 (2d Dep't 1991 (usury only applies to a "loan or forbearance of any money, goods or things in action."); *Seidel v. 18 E. 17th St. Owners, Inc.,* 79 N.Y.2d 735, 744 (1992)("Usury laws apply only to loans or forbearances, not investments. If the transaction is not a loan, there can be no usury, however unconscionable the contract may be"); *Lynx Strategies LLC v. Ferreira,* 28 Misc. 3d 1205(A), 1205(A) (Sup. Ct. N.Y. Co. July 6, 2010) ("The concept of usury applies to loans, which are typically paid at fixed or variable rates over a term. The instant transaction, by contrast, is an ownership interest in proceeds of a claim, contingent on the actual existence of any proceeds.").

16. Here, should the Court need to engage in an analysis of the instant transaction versus a loan transaction, "the court must examine whether or not defendant is absolutely entitled to repayment under all circumstances. 'For a true loan it is essential to provide for repayment absolutely and at all events or that the principal in some way be secured as distinguished from being put in hazard.'" *K9 Bytes, Inc. v. Arch Capital Funding, LLC.,* 56 Misc. 3d 807, 816 (Sup. Ct. Westchester Co. May 4, 2017) (*quoting Rubinstein v. Small,* 273 A.D. 102, 104 (1st Dept' 1947).

17. Section 541 of the Bankruptcy Code governs property of the Debtor's estate; however, the provisions of the Bankruptcy Code that govern property of the estate are borrowing statutes. The Bankruptcy Code "does not create or define property interests." *Matter of Oxford Mgmt., Inc.,* 4 F.3d 1329, 1334 (5t h Cir. 1993); *see also In re R&J Pizza Corp.,* No. 14-43066-CEC, 2014 WL 12973408, at *2 (Bankr. E.D.N.Y. 2014) ("the Bankruptcy Code does not create any property rights; rather, it protects legal or equitable interests already in existence."). Therefore, "it is well established that property rights in bankruptcy are determined by state law." *In re Vantage*

*Benefits Administrators, Inc.,* No. 18-31351-SGJ-7, 2024 WL 3842796 (Bank. N.D.Tx. Aug, 14 2024); *see also In re Miller,* 570 F.3d 633, 640 (5th Cir. 2009) ("Property interests are created and defined by state law.  Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."); *see also Wharton v. Com. Of Va.,* 993 F.2d 1541 (4th Cir. 1993) ("[f]ederal bankruptcy law provides that we can turn to state law to decide which interests are the rights of the debtor and which are the rights of the creditor").

18. The Agreement is very clear that it is an agreement for the purchase and sale of receivables, and not as loan.  In executing the Agreement, the Debtor transferred all of its right, title and interest in all of the receipts to Cashfloit until the full amount of the receipts was remitted.  The Debtor has not remitted the full amount of the Receipts to Cashfloit.  Therefore, the Debtor has no interest in the Receipts, having sold the Receipts to Cashfloit.  Thus, the Debtor's bankruptcy estate has no interest in the Receipts.  *See Matter of Polk,* 2020 WL 762215 at * 11 (Bankr. M.D. Ga. Feb. 14, 2020) (finding, when analyzing ostensibly identical contracts under New York law, that "pursuant to contracts, Kapitus purchased [merchant's] future accounts receivables up to the stated amount.  Thus, until repayment, all of [merchant's] receivables were Kapitus' property.")  The bankruptcy court in *In re R&J Pizza Corp.,* reached the same conclusion in holding the sale of the receivables were not property of the debtor's bankruptcy estate and the debtor was prohibited from using the purchased accounts until the creditor was paid in full.

19. Here, the Debtor has no interest in the Receipts and there may not utilize them or their proceeds for the benefit of the estate.  Because the Debtor is without an interest in the purchased receivables, the Debtor's collection of the receipts owned by Cashfloit does not constitute "cash collateral" that the Debtor may utilize under section 363 of the Bankruptcy Code.

Rather, those funds are the exclusive property of Cashfloit and the Debtor may not use them absent the consent of Cashfloit until such time as it is paid in full.

20. Should the Court hold that the receipts are property of the estate, Cashfloit must be granted adequate protection to allow for the Debtor's continued use. Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor may not use cash collateral unless: "(A) each entity that has an interest in such cash collateral consents; or (B) the Court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." *11 U.S.C. § 363(c)(2).* Section 363(a) defines cash collateral as: [C]ash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title. *11 U.S.C. § 363(c)(2).*

21. It a secured creditor objects to the debtor's proposed use of cash collateral, the court must ensure the creditor's interests are adequately protected: [O]n request of an entity that has an interest in property used . . . the court, with or without a hearing, shall prohibit or condition such use. . . as is necessary to provide adequate protection of such interest. *11 U.S.C. § 363(e).*

22. Adequate protection may be provided by requiring cash payments to the extent the use, sale or lease of the security results in a decrease in the value of the entity's interest in the security, providing additional or replacement liens to the extent the use of property decreases the entity's interest in the property, or granting such other relief that will allow the entity to realize the indubitable equivalent of its interest in such property. *See 11 U.S.C. § 361.*

23. "[A]dequate protection of a secured creditor's collateral and its fallback administrative priority claim are tradeoffs for the automatic stay that prevents foreclosure on debtors' assets: the debtor receives 'breathing room' to reorganize, while the present value of a creditor's interests is protected throughout the reorganization." *Bank of New York Trust Co., N.A. v. Pac. Lumber Co. (In re SCOPAC),* 624 F.3d 274 (5th Cir. 2010) (citing *In re Stembridge,* 394 F.3d 383, 387 (5th Cir. 2004).

24. The Cash Collateral Application requests the grant of adequate protection liens and adequate protection payments to the Disclosed Secured Creditors. The proposed adequate protection payments for all creditors equal monthly payments due by the Debtor but never disclosed to the Court. Thus, Cashfloit is left in the dark to understand the amounts. Similarly, the Debtor's proposed budget omits these amounts but does show a substantial surplus at the end of the initial period, which appears to be the end of January. There is no justification to provide the treatment to the Disclosed Secured Creditors and omit Cashfloit from the calculations but at the same time use Cashfloit's cash collateral for the Debtor's operations.

25. Accordingly, the Debtor should not be authorized to use the Receipts until and unless it grants the same treatment as the Disclosed Secured Creditors are proposed to receive. Cashfloit is entitled to adequate protection payments in the amount of $2,450 per week as provided for in the Agreement.

## **CONCLUSION**

26. For all the foregoing reasons, Cashfloit respectfully requests that this Honorable Court enter an order denying the proposed use of cash collateral, or in the alternative, granting Cashfloit adequate protection payments in the weekly amount of $2,450 and providing such other and further relief this Court deems just and proper under the circumstances.

Dated: Smithtown, New York
      January 16, 2025

                                  The Kantrow Law Group, PLLC
                                  Attorneys for Cashfloit LLC

BY:    S/Fred S. Kantrow
          Fred S. Kantrow (*pro hac vice*)
          732 Smithtown Bypass, Suite 101
          Smithtown, New York 11787
          516 703 3672
          fkantrow@thekantrowlawgroup.com

9