UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE | ) | CHAPTER 11 |
| | ) | |
| JMKA, LLC, | ) | CASE NO. 25-00036 |
| | ) | |
| DEBTOR. | ) | HONORABLE DAVID D. CLEARY |

**UNITED STATES TRUSTEE'S OBJECTION TO
DEBTOR'S MOTION TO EMPLOY COUNSEL**

Adam G. Brief, the Acting United States Trustee for Region 11 (the "**U.S. Trustee**"), respectfully submits this Objection (the "**Objection**") to Debtor's Application to Employ Counsel (the "**Application**") [Dkt No. 38] filed by JMKA, LLC (the "**Debtor**"). In support of his Objection, the U.S. Trustee respectfully states as follows:

**I.   INTRODUCTION**

1. The Debtor seeks to retain Ben Schneider ("**Schneider**") as its counsel in this bankruptcy case. However, Schneider has: (i) failed to make timely, adequate disclosure of his connections to the Debtor and parties that hold interests adverse to the Debtor, and (ii) represents at least one party that holds an interest directly adverse to the Debtor. For those reasons, Schneider's retention as counsel for the Debtor cannot be approved.

**II.   BACKGROUND**

**The Bankruptcy Filings and the Application**

2. On January 2, 2025 (the "**Petition Date**"), the Debtor filed its voluntary petition for relief under chapter 11 of the United States Bankruptcy Code. On that same date, Schneider filed a sub chapter V petition on behalf of Premier Childcare, LLC ("**Premier**") (case number 25-00037). The Debtor is the 100% owner of Premier. At the time, no further disclosures were made with respect to the relationship between the Debtor and Premier.

3. On January 3, 2025, Schneider filed an emergency motion to allow the Debtor to use cash collateral. [Dkt No. 3]. The emergency motion was granted and a hearing on cash collateral was held on January 6, 2025.

4. Also on January 6, 2025, Schneider filed a motion to allow the Debtor to pay accrued but unpaid pre-petition wages to its employees. [Dkt No. 12]. He filed a substantially similar motion in the Premier case on January 8, 2025. [Premier Dkt No. 10]. Each of the motions was granted.

5. On January 16, 2025, Schneider filed a motion to extend time to allow the Debtor to file its Schedules and other required documents. [Dkt No. 24]. On the same date he filed a motion seeking the same relief in the Premier case. [Premier Dkt No. 13]. Each of the motions was granted. The Debtor and Premier were granted until January 30, 2025, to file their Schedules and other required documents.

6. On January 24, 2025, the Debtor filed its Schedules, Statement of Financial Affairs and Schneider's Form 2030 and Retainer Agreement. [Dkt No. 33]. The Debtor's Schedule A/B discloses that Premier owes the Debtor $594,971 in "trade debt." Despite the admission in the Debtor's Schedules, Schneider's retainer agreement does not disclose any possible conflict of interest with respect to the Debtor and Premier. *See* Retainer Agreement.

7. Premier did not file its Schedules and other required documents by the extended deadline. Instead, on January 30, 2025, Premier filed a second motion to extend the time to file its Schedules and other related documents. [Premier Dkt No. 15]. In that motion, for the first time, Schneider indicates that he "has identified a possible conflict of interest that prohibits him from representing this Debtor [Premier]." Premier's Second Motion to Extend Time at ¶ 3 [Premier Dkt

No. 15]. Schneider has not supplemented the Debtor's Retainer Agreement at any time since learning of the conflict with Premier. Ultimately, Premier withdrew that motion.

8. On January 29, 2025, the Debtor filed an application to approve Schneider's retention. [Dkt No. 38]. Schneider filed a required Rule 2014 declaration – his Affidavit of Disinterestedness (the "**Affidavit**") -- with the application. In the Affidavit, Schneider indicates that the Debtor and Premier "share [ ] some of the same debt obligations." Affidavit at ¶ 3. Schneider also swore that he has done no substantive work for Premier and did only "a cursory review of the issues and obligations of Premier Childcare, LLC to ensure that bankruptcy was appropriate." *Id.* The Affidavit also includes a statement that Schneider has "no connections with the creditors, or any party in interest . . ." *Id.* at ¶ 5. Lastly, despite Schneider having filed Premier's bankruptcy petition, attending the IDI, filing a motion to pay prepetition wages, and filing two motions to extend Premier's time to file its Schedules and other required documents, his Affidavit included a statement that "I . . . represent no interest adverse to the Debtor in Possession, or the estate in the matters upon which I . . .[am] to be engaged." *Id.* at ¶ 6.

**The Amended Affidavit**

9. On January 30, 2025, Schneider filed his "Amended Affidavit of Disinterested Person" (the "**Amended Affidavit**") [Dkt No. 40]. The Amended Affidavit makes additional disclosures about retainers paid to Schneider for both this case and the Premier case. Amended Affidavit at ¶ 4.

10. Specifically, Schneider states that despite receiving a retainer from Premier, he has not been paid by Premier because "a possible conflict of interest was identified upon filing the bankruptcy case." *Id.* at ¶ 4.[1] No description or explanation of the potential conflict is provided.

---

[1] On January 31, 2025, Premier filed a motion to dismiss its bankruptcy case.

11. On February 3, 2025, the U.S. Trustee filed his Notice of Objection with respect to the Application. [Dkt No. 44].

12. The Application was first heard on February 5, 2025, at which time the Court granted Schneider until February 14, 2025, to file an amended affidavit in connection with the Application.

**The Second Amended Affidavit**

13. On February 14, 2025, Schneider filed his Second Amended Affidavit of Disinterested Person (the "**Second Amended Affidavit**"). [Dkt No. 53].

14. Schneider discloses the debt from Premier to the Debtor for the first time in the Second Amended Affidavit. Although he includes it for the first time in his Second Amended Affidavit, the information was previously disclosed in the Debtor's Schedules filed three weeks earlier and before he filed the Affidavit and the Amended Affidavit. *See* Second Amended Affidavit at ¶ 3. In the Second Amended Affidavit, Schneider classified an almost $600,000 debt owed from one client [Premier] to the other [the Debtor], as a "potential" conflict. *Id.*

15. Further, Schneider does not disclose the work that he did for Premier during its bankruptcy, including filing the pending motion to dismiss and each of the substantive motions he filed. Instead, Schneider enumerates limited pre-filing work he did and states other than that work, he has "done no other work for Premier." *Id*. at ¶ 4.

16. Additionally, Schneider states that he has not been paid by Premier because "a possible conflict of interest was identified upon filing the bankruptcy case." *Id.* at ¶ 5.

### III.   ARGUMENT

17. The Application fails because: (i) Schneider fails to make required disclosures and (ii) Schneider represents an entity that holds an interest adverse to the estate.

**Schneider Has Failed to Make Required Disclosures and, Therefore, Cannot Be Employed**

18. The disclosure requirements set forth in the Bankruptcy Code and Federal Rules of Bankruptcy Procedure that govern the employment of professionals are clear and mandatory. *See* 11 U.S.C. § 327(a); Fed. R. Bankr. P. 2014.

19. "The disclosure requirements apply to all professionals and are not discretionary. The professionals 'cannot pick and choose which connections are irrelevant or trivial.'" *In re Gellene*, 182 F.3d 578, 588 (7th Cir. 1999). "'Coy or incomplete disclosures' that force the court 'to ferret out pertinent information' will not do." *In re Jackson*, 401 B.R. 333, 339 (Bankr. N.D. Ill. 2009) (*quoting*, *In re Saturley*, 131 B.R. 509, 517 (Bankr. D. Me. 1991). "Very simply, '[a]nything less than the full measure of disclosure' is unacceptable." *Jackson*, 401 B.R. at 339-40 (*quoting Saturley*, 131 B.R. at 517). "This requirement goes to the heart of the integrity of the administration of the bankruptcy estate. The Code reflects Congress' concern that any person who might possess or assert an interest or have a predisposition that would reduce the value of the estate or delay its administration ought not have a professional relationship with the estate. *Gellene*, 182 F.3d at 588 *citing In re Crivello*, 134 F.3d 831, 835-36 (7th Cir. 1998).

20. It is Schneider's obligation to "state . . . to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee." Fed. R. Bank. P. 2014(a). That disclosure is to be in the form of "a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee." *Id*. While these provisions "allow[ ] the fox to guard the proverbial hen house, counsel who fail to disclose timely

and completely their connections proceed at their own risk." *Crivello*, 134 F.3d at 836. "'[T]he court has no duty to rummage through files or conduct independent investigations in order to determine whether prospective attorneys are involved in actual or potential conflicts of interest.'" *In re Envirodyne Inds., Inc.*, 150 B.R. 1008, 1020 (Bankr. N.D. Ill. 1993) (*quoting In re Tinley Plaza Assoc., Inc.*, 142 B.R. 272, 278-79 (Bankr. N.D. Ill. 1992)). Here, Schneider did not fulfil his disclosure obligations and runs the risk of that lack of disclosure. Further, Schneider's eventual disclosure is not complete and mischaracterizes the direct, actual conflict between the Debtor and Premier.

21. Schneider has failed to disclose in any meaningful way the claims by and between the Debtor and Premier until pressed by the U.S. Trustee. *See generally,* Affidavit, Amended Affidavit, Second Amended Affidavit. Schneider did not make adequate disclosure in the Affidavit or the Amended Affidavit despite knowing about the obligation from Premier to the Debtor. *See* Schedule A/B.

22. Moreover, the timing of Schneider's discovery of the conflict is not clear. If the conflict was discovered upon the filing of the Premier bankruptcy, as provided in the Second Amended Affidavit, Schneider should have taken no action in the Premier case. But he did file pleadings in the Premier case. If the conflict was not discovered until later, it is not clear what due diligence was performed because the debt from Premier to the Debtor is the Debtor's largest asset and Premier's largest obligation. Lastly, in no event was the disclosure timely because the receivable was listed in the Debtor's Schedules on January 24, 2025, but Schneider did not disclose it in detail in any of his Affidavits until February 14, 2025.

23. The adversity that exists between the Debtor and Premier was required to be disclosed. *See* Fed. R. Bankr. P. 2014. It was required to be disclosed before being raised by the U.S. Trustee. Schneider's failure to disclose that relationship dooms his retention in this case.

**Schneider Represents an Interest Adverse to the Estate and Is Disqualified Under 11 U.S.C. §327(a)**

24. Once the conflict between the Debtor and Premier was ferreted out, that representation prohibits his employment by the Debtor. Specifically, Schneider represents the holder of an interest adverse to the estate, Premier.

25. Schneider's employment is governed by § 327(a), which provides: "[e]xcept as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327(a). "Any attorney a debtor-in-possession wishes to hire should be '. . . free of the slightest personal interest which might be reflected in their decisions concerning matters of the debtor's estate.'" *In re Tinley Park Assocs., L.P.*, 142 B.R. 272, 277-78 (Bankr. N.D. Ill. 1992) (*quoting In re Kuykendahl Place Assoc., Ltd.*, 112 B.R. 847, 850 (Bankr. S.D. Tex 1989)); *see also*, *In re Am. Printers & Lithographers, Inc.*, 148 B.R. 862, 864-65 (Bankr. N.D. Ill. 1992). Counsel to a debtor-in-possession "owes a fiduciary duty to the corporation or partnership as an entity, and represents its interests, not those of its principals." *In re Grabill Corp.*, 113 B.R. 966, 970 (Bankr. N.D. Ill. 1990), *aff'd* 983 F.2d 773 (7th Cir. 1993). "Because it impacts the integrity of the bankruptcy system as a whole[,]" section 327 is "strictly enforced." *Tinley Plaza*, 142 B.R. at 277.

26. "The adverse interest and 'disinterested person' limitations set forth in § 327(a) represent the congressional intention to hold professionals performing duties for the estate to strict

fiduciary standards. This section is plainly concerned with a professional's divided loyalties and ensuring that professionals employed by the estate have no conflicts of interest with the estate." *In re Envirodyne Inds., Inc.* 150 B.R. 1008, 1016 (Bankr. N.D. Ill. 1993). "Together, the statutory requirements of disinterestedness and no interest adverse to the estate 'serve the important policy of ensuring that all professionals appointed pursuant to section 327(a) tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities.'" *In re Crivello*, 134 F.3d 831, 836 (7th Cir. 1989) (*quoting Rome v. Braunstein,* 19 F.3d 54, 58 (1st Cir.1994)). If both requirements are not met, the professional cannot be employed. *Envirodyne*, 150 B.R. at 1016. No waiver of any of the requirements will excuse compliance. *Id*; *see also*, *Am. Printers*, 148 B.R. at 867.

27. The analysis is done on a case by case basis (*see Envirodyne*, 150 B.R. at 1017), and in this case, Schneider does not meet the standard to be retained under § 327(a).

28. One of Schneider's clients, Premier, owes another of Schneider's clients, the Debtor, almost $600,000. That adversity was not disclosed until raised by the U.S. Trustee. Moreover, Schneider describes that adversity as a "potential" conflict. The conflict is not a potential conflict – it is an actual conflict – and Schneider is not able to represent both sides as counsel in a bankruptcy case.

29. This conflict is disabling even had it been timely disclosed.

**The Local Rules, the Bankruptcy Code, and the Rules of Professional Conduct, not Schneider's Affidavits, Govern Whether He Represents Premier**

30. Putting aside Schneider's lack of timely disclosure, which itself is disqualifying, Schneider misinterprets his role as counsel for Premier and ignores the Local Rules regarding attorney representation of debtors. *See generally*, Local Rule 2040-4 B.

31. In his Second Amended Affidavit, Schneider states that "I do not believe that any work I did for Premier was prejudicial to Premier Childcare, LLC, the Estate of Premier Childcare, LLC, JMKA, LLC, or the Estate of JMKA, LLC." Second Amended Affidavit at ¶ 4.

32. Such statement misses the mark. First, whether the work he did was prejudicial to the Debtor is not the proper legal standard, which standard was set forth above. *See generally*, 11 U.S.C. § 327; Fed. R. Bankr. P. 2014. Second, pursuant to Local Rule 2040-4 B, once Schneider filed Premier's bankruptcy petition, he was "the debtor's [Premier's] attorney for all purposes in the bankruptcy case." *See* Local Rule 2040-4 B. To date, Schneider has not sought to withdraw and remains Premier's counsel. *See* Illinois Rule of Professional Conduct 1.16.

33. Additionally, although Schneider did not file an engagement letter with Premier (in violation of Local Rule 2016-1) he is required to have one. *See* 11 U.S.C. § 528(a). Such letter was made in contemplation of the bankruptcy and constitutes his retention by Premier. Although Schneider has not sought retention in the Premier case, he is still Premier's attorney until he withdraws. Schneider's failure to be retained properly only means he cannot be paid. *See* 11 U.S.C. §§ 327, 330 and Fed. R. Bankr. P. 2014.

### IV.    CONCLUSION

34. For the foregoing reasons, Schneider cannot be retained as counsel for the Debtor.

RESPECTFULLY SUBMITTED:

ADAM G. BRIEF
ACTING UNITED STATES TRUSTEE

Dated: February 21, 2025        By: */s/ Jeffrey L. Gansberg*
Jeffrey L. Gansberg, Trial Attorney
OFFICE OF THE U.S. TRUSTEE
219 S. Dearborn, Room 873
Chicago, Illinois 60604
312-886-3327